UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | | |
|---|---|---|
| PATRICIA A. HAYNES, | ) | Civil Action No.: 4:22-cv-02156-TER |
| Plaintiff, | ) | |
| | ) | |
| -vs- | ) | |
| | ) | **ORDER** |
| KILOLO KIJAKAZI, | ) | |
| Commissioner of Social Security; | ) | |
| Defendant. | ) | |
| _____ | ) | |

This is an action brought pursuant to Section 205(g) of the Social Security Act, as amended,

42 U.S.C. Section 405(g), to obtain judicial review of a "final decision" of the Commissioner of

Social Security, denying Plaintiff's claim for disability insurance benefits (DIB). The only issues

before the Court are whether the findings of fact are supported by substantial evidence and whether

proper legal standards have been applied. This action is proceeding before the undersigned pursuant

to 28 U.S.C. § 636(c) and Fed. R. Civ. Proc. R. 73.

Defendant filed a contested Motion to Remand admitting errors in the fifth ALJ decision. The

specific errors Defendant admits are: consideration of the VA 100% rating, treating opinion of Dr.

Scott, failure to evaluate at all Plaintiff's pelvic floor dysfunction(PFD), and acting in contravention

to the Court's prior 2021 remand order. (ECF No. 22 at 1). Plaintiff asserts there is no justification

for a remand for a sixth hearing and such would be an abuse of administrative process; Plaintiff

requests a reversal for benefits instead. (ECF No. 23 at 2).

**RELEVANT BACKGROUND**

**A.    Procedural History**

Plaintiff filed an application for DIB on July 12, 2010, alleging inability to work since

October 7, 2007. Her claims were denied initially and upon reconsideration. Thereafter, Plaintiff

filed a request for a hearing.  A hearing was held in August 2012, at which time, a vocational expert (VE) and Plaintiff testified.  The Administrative Law Judge (ALJ) Martin issued an unfavorable decision on September 12, 2012, finding that Plaintiff was not disabled within the meaning of the Act.  (Tr. 1476).  Plaintiff filed a request for review of the ALJ's decision, which the Appeals Council denied in November 2014.  (Tr. 1468). Plaintiff filed an action in this court. Defendant moved to remand which was granted by this court in June 2014, stating that the ALJ's opinion did not reflect adequate consideration of Plaintiff's 90% disability rating by the VA and was to explain the weight given to the opinion. (Tr. 1501-1502).  In January 2015, another ALJ hearing was held. On March 18, 2015, ALJ Watson issued an unfavorable decision, finding that Plaintiff was not disabled within the meaning of the Act.  (Tr. 1523). On April 22, 2015, Plaintiff filed written exceptions and the Appeals Council assumed jurisdiction and remanded the case again for the ALJ to address: chronic constipation, migraines, reaching limitations opined by consultants, and additional evidence that prior to the DLI the VA found Plaintiff 100% disabled. (Tr. 1533-1534). The ALJ was tasked with obtaining further documents from the VA about the rationale for the 100% rating, as well as other tasks related to other issues. (Tr. 1534).   In January 2016, a third hearing was held. (Tr. 1540).

On March 23, 2016, ALJ Watson issued a third unfavorable decision, finding that Plaintiff was not disabled within the meaning of the Act.  (Tr. 1540). This was again appealed to this court. On July 19, 2017, upon Defendant's motion, this court remanded again because the ALJ's decision again did not reflect adequate consideration of the VA rating. (Tr. 3875-3876).  On March 11, 2019, the Appeals Council expressly noted in the remand order that the record again did not show the required attempt to obtain further documentation from the VA about the rationale for their 100%

rating as instructed in the remand order and the October 2010 decision was submitted as "Exhibit 18D"[1] one day after the ALJ's decision. (Tr. 3883). Another hearing was held in September 2019. (Tr. 3848). Plaintiff amended her AOD to January 1, 2010. (Tr. 3821). On November 12, 2019, ALJ Morriss found Plaintiff not disabled. (Tr. 3836). The Appeals Council declined to assume jurisdiction. In March 2020, Plaintiff filed a third action in this court. No. 4:20-cv-0922-TER.

On May 14, 2021, the Court remanded to obtain a fifth ALJ decision specifically for the following errors:

-The ALJ's citation to SSR 85-15 to support his conclusion that the light work base was not significantly eroded by the environmental limitations included in the RFC is not supported by substantial evidence. As to the limitation of understanding, remembering, and carrying out simple instructions, case law supports remand since a nonexertional limitation could affect the ability to perform jobs in the unskilled light occupational base. Based on the explanation and evidence cited by the ALJ at Step Five, the ALJ did not carry his burden that jobs existed in significant numbers in the national economy that Plaintiff could perform with the RFC given.

-The ALJ did not explain how the record "clearly demonstrated" deviation from substantial weight for the 100% VA rating opinion was appropriate. The ALJ's only reasoning provided was that some impairments caused some limitations and did not render Plaintiff unable to work. The VA's decision and reasoning were not even discussed, just percentages.

-The ALJ did not analyze all 20 C.F.R. § 404.1527(c) factors as required as to Dr. Scott's opinion and the ALJ never weighed Dr. Scott's GAF opinions.

-The ALJ did not address pelvic floor dysfunction as an impairment, much less a severity rating or consideration in the RFC. The record contains documentation of treatment by a specialist with objective evidence regarding PFD.

No. 4:20-cv-0922-TER.

---

[1] Exhibit 18D is the October 2, 2010 rating decision with a fax receipt date of March 24, 2016. (Tr. 1784-1795). There are additional VA decisions in the record at Exhibit 25D. (Tr. 4069).

3

In April 2022, there was a fifth ALJ hearing and decision. In July 2022, the fourth court action was filed. (ECF No. 1). The issues briefed by Plaintiff in the instant action are:

1) The ALJ again failed to mention much less evaluate PFD, in direct contravention of the May 2021 court order.

2) The ALJ erred in finding left shoulder/arm impairment, chronic constipation, migraine headaches, and major depressive disorder-moderate[2] and other medical conditions as nonsevere or not addressing as an MDI.

3) The ALJ failed to adequately consider the 100% VA disability rating as required by Fourth Circuit case law and the May 2021 court order.

4) The ALJ erred in evaluating Dr. Scott's treating opinion, which included a failure to weigh GAF opinions, which the court had specifically addressed in the May 2021 court order.

5) The errors above infiltrated the RFC.

(ECF No. 17). Defendant did not file a brief in response to the merits of the Plaintiff's arguments but filed a motion to remand as admittedly there were repeat errors in the fifth ALJ decision. (ECF No. 22).

## B.    Plaintiff's Background and Medical History

Plaintiff was born on December 17, 1964, and was forty-eight years old on the date last insured. Plaintiff has at least a high school education. Plaintiff alleges disability originally due to unusable left arm that was injured in military, herniated disc L4-L5, stroke, plate and screws holding left ankle together, migraines, and depression. (Tr. 173).  Only relevant records will be summarized under pertinent issue headings.

---

[2] The ALJ here had found "depression" as a severe impairment; Plaintiff argues there is a difference between "run-of-the-mill depression" and the diagnosis of "major depressive disorder-moderate." (ECF No. 17 at 27).

4

C.    **The ALJ's Decision**

In the decision of April 2022, the ALJ made the following findings of fact and conclusions

of law (Tr. 4199-4213):

1.    The claimant last met the insured status requirements of the Social Security Act on December 31, 2012.

2.    The claimant did not engage in substantial gainful activity during the period from her amended alleged onset date of January 1, 2010 through her date last insured of December 31, 2012 (20 CFR 404.1571 *et seq.*).

3.    Through the date last insured, the claimant had the following severe impairments: degenerative disc disease (DDD), depression, and headaches. (20 CFR 404.1520(c)).

4.    Through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5.    After careful consideration of the entire record, the undersigned finds that, through the date last insured, the claimant had the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) except that the claimant could never climb ladders, ropes, or scaffolds and can occasionally perform postural activities. The claimant needed to avoid all exposure to unprotected heights. She retains the ability to perform low stress work, i.e., simple, repetitive, routine tasks with occasional changes in the work setting and occasional interaction with the public.

6.    Through the date last insured, the claimant was unable to perform any past relevant work (20 CFR 404.1565).

7.    The claimant was born on December 17, 1964 and was 48 years old, which is defined as a younger individual age 18-49, on the date last insured. The claimant subsequently changed age category to a younger individual age 45-49 (20 CFR 404.1563).

8.    The claimant has at least a high school education (20 CFR 404.1564).

9.    Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a

5

finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10.   Through the date last insured, considering the claimant's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that the claimant could have performed (20 CFR 404.1569 and 404.1569a).

11.   The claimant was not under a disability, as defined in the Social Security Act, at any time from January 10, 2010, the amended alleged onset date, through December 31, 2012, the date last insured (20 CFR 404.1520(g)).

## DISCUSSION

Procedurally, Plaintiff has already had five hearings before four different ALJs. Three remands were court remands and one remand was an Appeals Council remand. Importantly, the errors regarding the evaluation of the VA opinion were present in all five ALJ decisions. In the 2021 court order, there were specific directions as to how pelvic floor dysfunction(PFD) was to be addressed by the ALJ; in the current 2022 ALJ decision, PFD is not even mentioned by the ALJ. Plaintiff points to the futility of a fifth remand as to the SSA's history of repeated disregard of the court's specific orders (ECF No. 23). Plaintiff argues there was been thirteen years of costly litigation solely due to repeated agency errors. (ECF No. 23). The record currently stands at 6,817 pages.

Other courts have found that a protracted procedural history can act as support for a reversal for benefits. Remand for more proceedings would serve no useful purpose and result in further delay especially where "Plaintiff's claims have been the subject of five ALJ hearings, four ALJ decisions, two Appeals Council remands, and two civil actions before this court." *Barnes v. Saul*, 2020 WL 4698808, at *5 (W.D.N.C. Aug. 13, 2020)(*citing Breeden v. Weinberger*, 493 F.2d 1002, 1011 (4th

Cir. 1974)(reversing for an award of benefits where the case was aged, had been remanded before, and reopening the record would serve no useful purpose). Where the errors concerned treating opinions, the case had been pending for seven years, the case had been through the appeals process before, and remand was unlikely to serve any useful benefits, the court reversed for benefits. *Cox v. Saul*, No. 5:19-CV-2067-CMC, 2020 WL 6129038, at \*3 (D.S.C. Oct. 19, 2020)(The commissioner there argued the court impermissible weighed evidence; the claimant noted the same errors had been remanded before and yet committed again by the ALJ. The court found the treating opinions there were reasonable, supported, and corroborated by substantial evidence.).

There is authority to reverse without remand when the Commissioner's "determination is in clear disregard of the overwhelming weight of the evidence." *Vitek v. Finch*, 438 F.2d 1157, 1158 (4th Cir. 1971). Where there is little likelihood that the Commissioner could adduce substantial evidence on remand to support a denial of benefits, an award of benefits is the appropriate remedy. *See Bond v. Saul*, No. 0:18-cv-2674-RMG, 2019 WL 4052429, at \*4-5 (D.S.C. August 28, 2019)(awarding benefits where remand for further administrative processing was "a needless act of futility," claimant's application had been pending for nearly a decade, and the record was fully developed). Recently, the Fourth Circuit has found that where the record as a whole establishes disability and considering ten years of costly litigation and two court actions, a remand for another hearing would be pointless and unjust. *Arakas v. Comm'r,* 983 F.3d 83, 112 (4th Cir. 2020); *Shelley C. v. Comm'r*, 61 F.4th 341, 368 (4th Cir. 2023)(awarding benefits having found the ALJ's findings were unsupported by substantial evidence and were not reached through the application of the correct legal standard).

Supported by the cases discussed above and by the instant record as a whole, remand for a

sixth ALJ hearing would serve no useful purpose here where the record shows a repeated pretermission of past remand orders, thirteen years of costly litigation, multiple SSA and court remands, a fully developed record, recurring errors, and a disregard of the weight of the evidence and accurate application of the appropriate legal standards.

Besides the protracted procedural history, an additional underpinning for a reversal for benefits instead of another remand is that substantial evidence does not support the instant ALJ's findings and the ALJ's findings were not reached through the application of the correct legal standards as to the following issues discussed below.

VA Opinion

Errors as to the evaluation of the VA's opinions were present in all five ALJ decisions in the record before the court. Plaintiff argues the repeated disregard of court orders in failing to remedy this error demonstrates the futility of a remand for a sixth ALJ hearing. (ECF No. 23 at 3).

In 2012, the Fourth Circuit decided *Bird v. Comm'r of S.S.A.*, 699 F.3d 337 (4th Cir. 2012). The ALJ "must give substantial weight to a VA disability rating." *Id.* at 343. The VA and the SSA "serve the same governmental purpose of providing benefits to persons unable to work because of a serious disability." *Id.* The Fourth Circuit held that because both agencies assess a person's ability to work in the national economy by focusing on functional limitations, "a disability rating by one of the two agencies is highly relevant to the disability determination of the other agency." *Id.* The ALJ may give less than substantial weight to the VA determination "when the record before the ALJ clearly demonstrates such a deviation is appropriate." *Id.*

In the present 2022 ALJ decision, the ALJ found:

In making this determination, the VA failed to refer to criteria used[3] by the Social Security Administration, including symptoms, signs, findings, and current functional capacity/limitations. The claimant's degenerative disc disease and depression will cause some limitations as reflected in the above residual functional capacity assessment but did not render the claimant unable to work prior to her date last insured. As such, I have considered the claimant's combined impairments in arriving at the above residual functional capacity, supported by testimony of a vocational expert, but, nonetheless, accord the claimant's VA disability rating less than substantial weight. (Exhibits 18D and 33F).

(Tr. 4208-4209).

The ALJ's "explanation" is reminiscent and nearly an exact replica of the prior 2019 ALJ's finding, which had been remanded. (Tr. 3833). The ALJ's reasoning provided was that some impairments caused some limitations and did not render Plaintiff unable to work. The additional reason that the VA did not use SSA criteria is unavailing. Like the prior 2019 ALJ decision, the VA's decision and reasoning was not even discussed by the 2022 ALJ; only the percentages were noted by the instant ALJ. (Tr. 4208).

The VA's October 2010 decision granted individual unemployability as of January 4, 2010, very near Plaintiff's current alleged onset date. (Tr. 1784). Evidence reviewed by the VA were examinations on January 4, 2010, January 7, 2010, March 27, 2010, March 30, 2010, and August 25, 2010; records from the SSA, and outpatient treatment records from July 2009 to September 2010. (Tr. 1785). Under reasons, it is noted an examiner found Plaintiff unemployable due to depression(50%), lumbar degenerative disc disease(40%), left shoulder arthropathy(20%), and five

---

[3] *Bird* does not assume or require that the VA opinion refer to criteria used by the SSA. *Bird* acknowledges that both government entities are reviewing records(which necessarily include symptoms and clinical findings) for similar time periods for the similar purpose of evaluating disability. *Bird*, 699 F.3d at 343.

additional impairments rated each at 10%.[4] (Tr. 1786-1795). The VA noted an exam where Plaintiff exhibited depressive affect, was tearful, and avoided eye contact. Plaintiff had a GAF of 50. (Tr. 1787). The VA found evidence showed Plaintiff had occupational and social impairment with reduced reliability and productivity due to symptoms of disturbances of motivation and mood and difficulty in establishing and maintaining effective work and social relationships. (Tr. 1787). As to the lumbar impairment, the VA noted reports of constant daily pain, as needed cane use, and inability to sit more than three hours or walk more than 15 minutes. (Tr. 1788). The VA relied on an exam of antalgic, shuffling gait and reduced range of motion, bending, and rotation, all with pain. An increase from 40% to 50% was not warranted because there was no evidence of ankylosis of entire thoracolumbar spine. (Tr. 1788). As to Plaintiff's shoulder impairment, the VA noted an examination showed pain to palpation or with range of motion of Plaintiff's left shoulder. At an August 2010 exam, Plaintiff had reduced range of motion with pain. (Tr. 1789).

Given that the VA had reviewed similar records from a similar time period that the SSA was tasked with reviewing, after five ALJ hearings, it appears there is no clearly demonstrable reason in the record for deviating from the presumption of substantial weight to the VA's findings of 100% disabled. If the VA's findings, which were supported by similar records that are before the court, were given the appropriate presumptive weight here of substantial weight per *Bird*, the VA opinion further supports finding Plaintiff disabled for SSA purposes, along with the other issues discussed below. *Brown v. Saul*, No. 4:18-cv-870-RMG, 2019 WL 3080921, at *4 (D.S.C. July 15, 2019)("The record before the Court does not 'clearly demonstrate' a basis to reject the VA disability rating. The failure of the ALJ to follow the requirements of *Bird* requires the reversal of the decision of the

---

[4] The VA records show a total percentage of disabled of more than 100%.

agency. Since there is not evidence in the administrative record that "clearly demonstrates" that the Social Security Administration should deviate from the VA disability rating, Plaintiff is entitled to an award of Social Security disability benefits.").

PFD

Plaintiff notes that the prior court order specifically directed the ALJ to expressly make findings on the severity of Plaintiff's pelvic floor dysfunction(PFD) and to consider PFD in formulating the RFC. (ECF No. 17 at 24); (Tr. 4284-4287). Despite the ALJ himself explicitly noting that the court's order directed him to further consider impairments at Step Two and their impact on the remaining Steps, the ALJ again failed to mention the impairment of PFD, much less give a severity rating or accommodate for it in the RFC limitations. (Tr. 4199-4202). The error invaded the RFC and causes the RFC to be unsupported by substantial evidence.

On December 20, 2012, Dr. Joseph D. Thomas, a gastroenterologist at the VAMC, examined Plaintiff and provided a summary of Plaintiff's recent history within the relevant period. At that visit, Plaintiff complained of continued constipation and Plaintiff declined further biofeedback therapy for PFD because it had not been helpful many years ago. (Tr. 1869). Plaintiff went up to two weeks without a bowel movement. Plaintiff failed miralax and fiber as treatment. Plaintiff had pain with defecation consisting of burning, sharp sensations in her anus. Plaintiff must push her perineum to pass stool. Plaintiff's February 2011 colonoscopy was normal except for a small tubular adenoma. In September 2011, Plaintiff had a MRI defecography[5] that showed very poor squeeze ability and

---

[5] Defecography means: "the making of rapid-sequence radiographs or the recording of fluoroscopic images on videotape during defecation following the instillation of barium into the rectum; used in the evaluation of fecal incontinence."*Hartsfield v. Colvin*, 2013 WL 3212292, at *9 (N.D. Fla. June 21, 2013).

she was unable to expel balloon. A December 2011 anorectal manometry[6] showed severe decreased

sensory threshold and very poor squeeze pressure. Specialist Dr. Thomas stated these objective

findings were consistent with PFD. (Tr. 1869). Under plan, "the patient has a long complicated

history of constipation. We know she has pelvic floor dysfunction but there is also a question of

whether she has colonic inertia and she is also profoundly hypothyroid. Given all of these things, her

constipation is likely multifactorial." (Tr. 1872).[7]

   A severe impairment is one that "significantly limits [a claimant's] physical or mental ability

to do basic work activities." 20 C.F.R. § § 404.1520(c), 416.920(c). "Basic work activities" means

"the abilities and aptitudes necessary to do most jobs." 20 C.F.R. § § 404.1521(b), 416.921(b). One

example of a basic work activity is physical functions, such as walking, standing, sitting, lifting,

---

   [6] "Anorectal manometry is a measurement of the pressure inside the anus or lower rectum that is generally taken by inserting a probe approximately six inches and inflating a balloon on the end of it." *United States v. Martinez,* 921 F.3d 452, 464 (5th Cir. 2019).

   [7] Plaintiff testified sitting too long caused a lot of pain. (Tr. 4235). In 2011, a function report generally stated Plaintiff has concentration problems due to pain. (Tr. 238). In 2015, Plaintiff testified she saw a GI specialist every three months and was still searching for answers. (Tr. 4116). Plaintiff testified she could not use the bathroom and was sent for tests about and the result was her muscles are "messed up" causing constipation. (Tr. 4116). In 2016, Plaintiff testified she had constipation problems for more than five years and  various treatments had not been helpful. (Tr. 4134). The ALJ in 2016 noted the Appeals Council's remand specifically ordered reconsideration in regard to constipation. (Tr. 4140).  Plaintiff testified she had gone through all the possible medication and she was supposed to go through a physical therapy program that had experienced numerous delays in setting up. (Tr. 4140).  Plaintiff testified the purpose of the proposed therapy was to strengthen her bowels. (Tr. 4141). Plaintiff testified she had a bowel movement every seven to ten days. (Tr. 4142). Later 2016 records outside of the period noted history of failing almost all of the over-the-counter regimens for constipation/PFD and had not tried some exercises extensively due to her back issues. (Tr. 4532). In 2016, Plaintiff changed her regimen to taking four prescription pills once a week to induce a bowel movement. (Tr. 4532). It was noted this was not an approved dose. (Tr. 4534). By 2017, that specific medication no longer worked and Plaintiff had a bowel movement every 10 days. (Tr. 5114). Plaintiff's specialist noted Plaintiff's PFD results in chronic constipation. (Tr. 4661). Eventually, Plaintiff "failed all conservative measures for her constipation." (Tr. 4752).

pushing, pulling, reaching, carrying, or handling. 20 C.F.R. § § 404.1521(b), 416.921(b). Any impairment, whether severe or non-severe, is required to be considered in the remaining steps of the sequential analysis. 42 U.S.C. § 423(d)(2)(B); *Walker v. Bowen*, 889 F.2d 47, 50 (4th Cir.1989).

No mention is made by the ALJ of Plaintiff's PFD as either a severe or non-severe impairment. The failure of the ALJ to address all impairments, particularly the documentation regarding PFD, fundamentally undermines the validity of the assessment of Plaintiff's condition at Step Three and subsequent steps of the sequential analysis. *See also Ducoff v. Colvin*, No. 0: 13-1484-RMG, 2014 WL 3784337, at *4-5 (D.S.C. July 30, 2014). The record supports that PFD would be found as a severe impairment if evaluated according to the appropriate legal standards as discussed above.

An RFC is an assessment of the extent to which Plaintiff's pain may cause physical or mental limitations or restrictions that affect work capacity. SSR 96-8p. There must be objective evidence of a condition that could reasonably produce pain, but there is no requirement of objective evidence of the pain itself. 20 C.F.R. § 404.1529; *Walker v. Bowen*, 889 F.2d 47, 49 (4th Cir. 1989). Plaintiff's symptoms and support in the record for the severity of symptoms is relevant to the RFC evaluation. *Dowling v. Comm'r*, 986 F.3d 377, 387-388 (4th Cir. 2021)(the ALJ there failed to properly assess impact of allegations of sitting problems on the ability to perform sedentary work); 20 C.F.R. § 404.1545(a)(3)(an ALJ is required to consider limitations resulting from pain). Besides evidence of medical findings, history, effects of treatment, daily activities, and opinions, the RFC assessment must be based on evidence of effects of pain reasonably attributed to an MDI. SSR 96-8p, 1996 WL374184, *5. Pain is not intrinsically exertional or nonexertional. SSR 96-8p, *6.

The record here contains documentation of treatment by a specialist with objective evidence

13

regarding PFD and allegations by Plaintiff regarding the effect of the impairment. Specifically, Plaintiff testified to limitations caused by pain with defecation consisting of burning, sharp sensations in her anus and difficulty sitting. Based on the record as a whole, substantial evidence supports exertional limitations in sitting as well as nonexertional limitations of time off task for pain and difficultly defecating.[8] The ALJ failed on multiple occasions to account for these limitations in formulating an RFC.

Opinions

Plaintiff argues the ALJ erred in evaluating Dr. Scott's treating opinions, including a failure to weigh GAF opinions, which the court had specifically addressed in the May 2021 order. (ECF No. 17 at 30-32). The ALJ only analyzed a June 2011 letter from Dr. Scott, regarding having student loans forgiven due to disabilities, which stated: "I do not foresee [claimant] being able to engage in gainful employment at this time or in the future." (Tr. 4210; 1835).  The ALJ gave little weight stating it did not indicate what symptoms Dr. Scott treated, how long Dr. Scott treated Plaintiff, and did not opine about what activities Plaintiff could perform. (Tr. 4210). The ALJ briefly acknowledged that the record showed Dr. Scott treated Plaintiff for symptoms of depression but that Plaintiff did not require inpatient psychiatric treatment. (Tr. 4210).

---

[8]There has been no SSA analysis as to PFD despite prior court remand orders directing an analysis. Nevertheless, even without the court's above analysis as to PFD, reversal for benefits of this action is wholly supported by the other issues discussed as to the VA opinion and the treating opinions as to the impairment of "major depression-moderate." *See also Shelley C. v. Comm'r*, 61 F.4th 341, 368 (4th Cir. 2023)(reversing for benefits where the ALJ erred in evaluating a treating opinion and failed to consider the record's substantial evidence regarding depression).

In the May 2021 order, the court expressly noted that the ALJ failed to weigh GAF scores[9]

and the ALJ did not analyze all 20 C.F.R. § 404.1527(c) factors as required. (Tr. 4283); *Dowling v.*

*Comm'r*, 986 F.3d 377, 389 (4th Cir. 2021);*Arakas v. Comm'r*, 983 F.3d 83, 107 n.16 ("20 C.F.R.

§ 404.1527(c) requires ALJs to consider *all* of the enumerated factors in deciding what weight to

give a medical opinion."). In the ALJ's opinion overall, the ALJ noted GAF scores indicating

moderate symptoms but did not weigh them or consider them to be opinions. (Tr. 4206). Just as with

the PFD issue and the express prior directives of the court, the fifth ALJ decision failed to weigh Dr.

Scott's GAF opinions and failed to address the § 404.1527(c) factors.[10]

As to the 20 C.F.R. § 404.1527(c) consistency[11] factor with Dr. Scott, SSA nonexamining

Dr. Adamo, Ph.D. in March 2012 opined Plaintiff's impairment of major depression-moderate was

severe. Dr. Adamo opined Plaintiff's allegation of depression was credible and was consistent with

---

[9] "For purposes of the Social Security disability programs, when it comes from an acceptable medical source, a GAF rating is a medical opinion as defined in 20 CFR §§ 404.1527(a)(2) and 416.927(a)(2). An adjudicator considers a GAF score with all of the relevant evidence in the case file and weighs a GAF rating as required by §§ 20 CFR 404.1527(c), 416.927(c), and SSR 06-03p, while keeping the following in mind: The GAF is unlike most other opinion evidence we evaluate because it is a rating. However, as with other opinion evidence, a GAF needs supporting evidence to be given much weight. ...When case evidence includes a GAF from a treating source and you do not give it controlling weight, you must provide good reasons in the personalized disability explanation or decision notice." Administration's directive AM-13066, Global Assessment of Functioning (GAF) Evidence in Disability Adjudication (eff. date July 22, 2013, revised Oct. 14, 2014). *But see Woodbury v. Colvin*, No. 9:15-cv-2635-DCN, 2016 WL 5539525, *6 (D.S.C. Sept. 30, 2016)(collecting cases)( "[C]ourts in this Circuit are split on the effect of AM-13066." ).

[10] The court acknowledged previously that the loan forgiveness letter opinion could be viewed as an issue reserved for the Commissioner. (Tr. 4283).

[11] Further bolstering the consistency factor, in finding Plaintiff disabled, the VA noted MDD was 50% disabling. The VA specifically noted Dr. Scott's GAF scores, exam of tearful affect and avoidant eye contact, and that evidence showed reduced reliability and productivity due to symptoms from MDD.(Tr. 1787).

clinical data. (Tr. 1037). There were pain related concentration problems. (Tr. 1037). Plaintiff had moderate difficulties in maintaining concentration, persistence or pace. (Tr. 1048). Plaintiff was moderately limited in ability to: perform activities within a schedule, maintain regular attendance, be punctual, complete a normal workday/workweek without interruptions from psychological symptoms, and to perform at a consistent pace without an unreasonable number and length of rest periods. (Tr. 1052-1053). Plaintiff was not limited in ability to carry out detailed instructions.

As to the 20 C.F.R. § 404.1527(c) factors of "length of treatment relationship and frequency of examination and nature and extent of the treatment relationship," Dr. Scott treated Plaintiff since at least October 2009, prior to the alleged onset date of January 2010, and even though the letter opinion was in 2011, longitudinally Dr. Scott continued to treat Plaintiff into at least 2017. It appears Plaintiff was generally examined by Dr. Scott around every three months. Despite being outside the relevant period, Plaintiff's depression did not improve, worsened, and the MDD diagnosis changed in 2014 from moderate to severe.(Tr. 5100).

As to the 20 C.F.R. § 404.1527(c) factors of supportability with medical findings, explanation, and consistency with the record, the following notes, assessments, and contemporaneous exams of Dr. Scott act as support for Dr. Scott's GAF opinion scores and 2011 letter.

In October 2009, Dr. Scott noted as history that Plaintiff had not been sleeping, was having more frequent headaches, and was tired of dealing with pain. (Tr. 748). Plaintiff examined with blunted affect. (Tr. 750). Under assessment, patient "continues to be angry and have trouble with her mood because of chronic pain, does not notice much different in mood with increase in" medication. (Tr. 751). Plan noted that pain was the driving factor of Plaintiff's mood.

16

In December 2009, Dr. Scott noted as history that Plaintiff continued to feel depressed with low energy and decreased sleep. (Tr. 725). Upon exam, Plaintiff had low tone speech, depressed affect, and was tearful at times. (Tr. 727). Plan was a medication dosage increase. (Tr. 727).

In March 2010, Dr. Scott noted as history that Plaintiff reported stopping all medications because they were unhelpful, she felt sedated all the time, and she was attempting to take a college course so she stopped everything. "Mood is very negative today." (Tr. 693). Upon exam, Plaintiff had minimal eye contact, depressed mood and affect, and was tearful. (Tr. 694). Assessment was worsening mood and pain related to a multitude of issues. GAF opinion was 55. (Tr. 695). Plan was to add one medication back at a time to determine the cause of sedation.

In June 2010, Dr. Scott noted Plaintiff reported being confused about her medications and one was causing her to sleep 16 hours a day. Plaintiff skipped medications near appointment dates in order to be able to drive to the appointment. (Tr. 649). Upon exam, Plaintiff was yawning and had depressed mood. (Tr. 650). Assessment noted unable to reconcile medication. GAF opinion was 55.

In August 2010, Dr. Scott noted Plaintiff reported chronic pain had brought her mood down significantly and Plaintiff has trouble interacting with others. Plaintiff was compliant with medication and not experiencing much relief. (Tr. 637). Upon exam, Plaintiff had depressed mood (Tr. 639). GAF opinion was 55. Assessment was Plaintiff continued with depressive symptoms and problems with chronic pain. (Tr. 639).

In October 2010, Dr. Scott reported a history of Plaintiff only being partially compliant with medication, having multiple medical issues, chronic pain, no social support, and a lack of defined coping techniques. (Tr. 593). Upon exam, Plaintiff had a depressed affect and impaired insight. (Tr.

594-595). Plaintiff struggled with motivation towards social activity and was reluctant to begin therapy. (Tr. 595). GAF opinion was 55. Assessment was "continued significant depression."

In February 2011, Dr. Scott noted Plaintiff reported[12] her low mood was due to her multiple physical medical problems. Plaintiff reported trying to take one class but could not focus. "She has chronic pain which contributes to poor mood." Plaintiff isolates with no support system. (Tr. 519). Plaintiff reported Elavil did not help much any more with sleep or headaches. She did not realize she was supposed to take three pills of Elavil instead of two. (Tr. 519). Upon exam, Plaintiff had depressed mood and impaired judgment and insight. (Tr. 521-522). GAF opinion was 55. Assessment was major depressive disorder in chronic pain cycle with very little support or outlets. (Tr. 521). Plaintiff declined therapy and was encouraged to increase social interaction. (Tr. 521).

In May 2011, Dr. Scott noted Plaintiff reported her mood was low because of pain. Plaintiff reported she forgot to renew Effexor (venlafaxine). She "is hopeless." Plaintiff reported low energy, low motivation, and poor appetite. (Tr. 514). Upon exam, Plaintiff was in moderate distress. Plaintiff had her head down and eyes averted or closed during much of the session with her head in her hands. Plaintiff had bad mood and dysphoric and depressed affect. (Tr. 515). GAF opinion was 55. (Tr. 516). Medications were restarted. (Tr. 516).

In August 2011, Dr. Scott noted Plaintiff continued to have significant pain and depressed mood. Venlafaxine was somewhat helpful, but remaining medications were not helpful. Elavil did give her 5 hours of sleep. (Tr. 505). Upon exam, Plaintiff was in moderate distress from pain,

---

[12]  "Ultimately, because of the unique and subjective nature of MDD, subjective statements from claimants should be treated as evidence substantiating the claimant's impairment." *Shelley C. v. Comm'r*, 61 F.4th 341, 361–362 (4th Cir. 2023)(internal quotations omitted).

appeared rather groggy, minimal eye contact, prominent pauses in speech, depressed mood, and tearful affect at times. (Tr. 506). GAF opinion was 55. (Tr. 507). Abilify was added. (Tr. 507).

In October 2011, Plaintiff reported to Dr. Scott she had suicidal ideations with no plan and noticed no difference on Abilify. (Tr. 498). Upon exam, Plaintiff was in some distress, had "+pmr", slow speech with prominent pauses, low tone, depressed mood, and tearful affect. (Tr. 499-500). Assessment was "functioning very limited by pain and depression." Medication was increased. (Tr. 501). GAF opinion was 55 and was supported by abnormal exam findings. (Tr. 499-501).

In January 2012, based on notes in poor readability condition, Plaintiff was seen by Dr. Scott. Plaintiff's mood was low due to multiple locations of pain. (Tr. 1266). Upon exam, her abdomen was protuberant, eyes mostly closed, minimal eye contact, and depressed mood. Medication dosage was increased and changed to extended release. (Tr. 1269). GAF opinion was 55. Plaintiff was still on Elavil and Abilify, in addition to Effexor.

In April 2012, Dr. Scott noted Plaintiff's mood was about the same despite a medication increase. Plaintiff had an episode of suicidal ideation when the pain was extremely bad. Plaintiff had continued insomnia. (Tr. 1338). Upon exam, Plaintiff had depressed mood and affect. (Tr. 1340). GAF opinion had decreased to 50. (Tr. 1341). Effexor(venlafaxine) was to be increased again. Assessment was depression with no relief. (Tr. 1341).

In November 2012, Plaintiff was seen by Dr. Scott. Plaintiff reported continued depression stemming from physical conditions namely chronic pain. "Sometimes doesn't feel like going on, but does not want to harm herself." (Tr. 1906). Upon exam, Plaintiff was tearful at times, "mild pmr", paucity of spontaneous speech, and passive suicidal thoughts. (Tr. 1908-1909). Assessment was not progressing on medication and has had multiple medication trials without good progress.

19

Electroconvulsive therapy (ECT) was discussed and Plaintiff wanted more information through a consultation before making a decision about ECT.[13] (Tr. 1910). GAF opinion was 50. Plaintiff was referred to Dr. Huber for ECT. (Tr. 1910).

The ALJ had been previously ordered by the court to weigh the GAF opinions and the 2011 letter of Dr. Scott using all of the 20 C.F.R. § 404.1527(c) factors; the ALJ ignored the court order and failed to weigh the opinions in accordance with the applicable legal standards. As displayed above, the court considered the 20 C.F.R. § 404.1527(c) factors in light of the record; the record displays that most factors would support giving favorable, even controlling, weight towards Dr. Scott and thus Plaintiff's disability. *See Cox v. Saul*, No. 5:19-CV-2067-CMC, 2020 WL 6129038, at *3 (D.S.C. Oct. 19, 2020)(The same errors had been remanded before and yet committed by the ALJ again. The court found the treating opinions were reasonable, supported, and corroborated by substantial evidence.). Substantial evidence does not support the ALJ's weight of the 2011 letter and the failure to weigh the GAF opinions. Substantial evidence of contemporaneous treatment exams and other records corroborate Dr. Scott's opinions.

**Conclusion**

This court finds that there is nothing further to be gained from remanding this matter for a sixth ALJ hearing because the ALJ's decision is not supported by substantial evidence, the ALJ's findings were not reached through the application of the correct legal standard, and there is

---

[13] "ECT is given to patients with severe, treatment-resistant depression and is performed under general anesthesia, with "small electric currents ... passed through the brain, intentionally triggering a brief seizure. ECT seems to cause changes in brain chemistry that can quickly reverse symptoms of certain mental health conditions." *Shelley C. v. Comm'r*, 61 F.4th 341, 349 (4th Cir. 2023)(internal citation omitted).

substantial evidence that Plaintiff is disabled. Therefore, in its discretion, the court reverses this

matter and remands solely for an award and calculation of the amount of benefits.


                                            s/Thomas E. Rogers, III

August 15, 2023                             Thomas E. Rogers, III
Florence, South Carolina             United States Magistrate Judge